## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**PEDERSON PRODUCTION, INC.**
**d/b/a SUNBELT BUSINESS**
**BROKERS and/or SUNBELT**
**BUSINESS ADVISORS,**

        **Plaintiff,**

v.                                      Case No. 06-2252-JWL

**ROBERT KETCHAM, JIM**
**LANGLAND, JIM KALDENBERG,**
**and THE TRIUM GROUP,**

        **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff Pederson Production, Inc. (PPI) is a Kansas resident in the business of providing business brokerage services. Defendants include three individuals: Robert Ketcham, Jim Langland, and Jim Kaldenberg; and The Trium Group, which is an Iowa business consisting of the individuals. PPI asserts a state law claim against defendants for breach of contract, seeking actual and nominal damages. This matter comes before the court on defendants' motion to dismiss for lack of personal jurisdiction or improper venue, or in the alternative, to transfer venue (Doc. #6). For the reasons explained below, defendants' motion is denied.

1

**I.      Background**

As part of its business brokerage service, PPI approaches existing businesses on behalf of its clients with the goal of effecting a sale of the existing business to a particular client. PPI's complaint alleges that on October 22, 2001, the parties entered into a written contract whereby PPI agreed to help defendants purchase a quilting company. In return, defendants agreed to pay PPI an initial search fee of $2,000.00 and a contract fee of 3% of the final price defendants paid to purchase a quilting company. Defendants mailed the initial search fee of $2,000.00 to PPI in Overland Park, Kansas. PPI approached American Professional Quilting on behalf of defendants, obtained financial and business information, and facilitated a meeting between defendants and the owners of American Professional Quilting. Defendants ultimately purchased American Professional Quilting, but allegedly failed to pay the 3% contract fee to PPI.

PPI filed this lawsuit on June 16, 2006, asserting a state law claim for breach of contract against defendants. In their motion to dismiss, defendants argue that their contacts with Kansas, consisting only of e-mail, telephone calls, and mail, are insufficient to establish personal jurisdiction in this court because defendants never physically entered Kansas. Defendants alternatively argue for dismissal due to improper venue or for a change of venue. PPI argues that defendants' actions of placing more than two dozen phone calls to Kansas, sending various other letters and e-mails to PPI in Kansas, and sending the $2,000.00 initial purchase fee to Kansas is sufficient to satisfy the personal jurisdiction requirements of this court. PPI also argues that venue is appropriate in Kansas because 28 U.S.C. § 1391(a) is

satisfied and the defendants have failed to establish that the existing forum is inconvenient.

**II.     Standards**

A.     Personal Jurisdiction

"The burden of establishing personal jurisdiction over the defendant is on the plaintiff." *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).  When the evidence presented on the motion to dismiss consists of affidavits and other written materials, as is the case here, the plaintiff need only make a prima facie showing of personal jurisdiction.  *Id*.  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *Id*. (quotation omitted). The court "must resolve all factual disputes in favor of the plaintiff." *Bell Helicopter Textron*, 385 F.3d at 1295.

B.     Venue

The standard for deciding a motion to dismiss for improper venue is generally the same as for deciding a motion to dismiss for lack of personal jurisdiction.  *Rusty Eck Ford-Mercury Corp. of Leavenworth v. American Custom Coachworks, LTD*, 184 F. Supp. 2d 1138, 1144 (D. Kan. 2002)(citations omitted).

**III.    Analysis**

*A.     Personal Jurisdiction*

To obtain personal jurisdiction over a nonresident defendant in a diversity action, the plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *Pro Axess, Inc. v. Orlux Distrib'n, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005). "Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, we proceed directly to the constitutional issue." *OMI Holdings*, 149 F.3d at 1090; *accord Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which [the defendant] has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). "[A]n analysis of whether a court's exercise of specific personal jurisdiction comports with the Due Process Clause is a two-step inquiry." *Pro Axess*, 428 F.3d at 1276. The court first considers whether the defendants have minimum contacts with the forum state in the sense that "the defendant[s]' conduct and connection with the forum State are such that [the defendants] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). If the defendants' actions create sufficient minimum contacts, the court then considers whether the exercise of personal jurisdiction over the defendants offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987).

1.      Minimum Contacts

The "minimum contacts" standard may be met in either of two ways. *Bell Helicopter Textron*, 385 F.3d at 1296. The court may exercise general jurisdiction if the defendants have "continuous and systematic general business contacts" with the forum state. *Id.* (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984)). Or, if the defendants have purposefully directed their activities at residents of the forum, the court may exercise specific jurisdiction in cases that arise out of or relate to those activities. *Id.* (quoting *Burger King*, 471 U.S. at 472-73). In this case, PPI has made no colorable showing that defendants have continuous and systematic contacts with Kansas. Thus, the court confines its analysis to the minimum contacts inquiry for specific jurisdiction.

To support specific jurisdiction, there must be "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum state." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This requirement precludes personal jurisdiction as the result of "random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475. "A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and . . . the plaintiff's claim arises out of or results from actions by the defendant [it]self that create a substantial connection with the forum state." *Pro Axess*, 428 F.3d at 1277 (quotation omitted). "Whether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case." *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996); *accord Benton v. Gameco Corp.*, 375 F.3d 1070,

1076 (10th Cir. 2004), cert. denied, 544 U.S. 974 (2005).

PPI's claim against defendants arises from the fact that defendants entered into a contract with PPI, a Kansas resident. "A contract between a nonresident and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum." *Benton*, 375 F.3d at 1077 (citing *Burger King*, 471 U.S. at 473). In circumstances involving contractual obligations with a nonresident, "'parties who reach out . . . and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.'" *Id.* (quoting *Burger King*, 471 U.S. at 473). In such a case, the "relevant factors for assessing minimum contacts include 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Id.* (quoting *Burger King*, 471 U.S. at 479). In evaluating these factors, the court must focus on the actions of the defendant. *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004) ("Generally speaking, specific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else.").

The court finds that the Tenth Circuit's reasoning in *Continental American Corporation v. Camera Controls Corporation* governs the personal jurisdiction issue in this case. 692 F.2d 1309 (10th Cir. 1982). In *Continental American*, the plaintiff, a Kansas corporation, sought to collect on accounts from the defendant, a California corporation, for goods that were manufactured at the plaintiff's factory in Ohio. *Id.* at 1310. The Tenth Circuit held that the fact that the defendant made payments on the account to the plaintiff in

Kansas "provide[d] circumstantial proof that the parties agreed some performance would be rendered in the forum state." *Id*. at 1312. Thus, those events created a contract to be performed in part in Kansas, consequently satisfying K.S.A. § 60-308(b).[1] *Id*.

The Tenth Circuit further held that assertion of personal jurisdiction over the nonresident defendant did not violate constitutional due process because "part performance of the contract, *e.g.*, partial payment of the contractual amount, did take place in Kansas." *Id*. at 1314. The court reasoned that it could "be fairly said that the defendant here availed itself of the privilege of business contacts with Kansas offices" and that "by ceasing to make partial payments, defendant should certainly have foreseen the possibility of being haled into court in Kansas." *Id*.

Following the Tenth Circuit's reasoning in *Continental American*, the court finds that the assertion of personal jurisdiction over defendants in this case is proper under K.S.A. § 60-308(b)(5)[2] and constitutional due process principles because the record reveals that the parties contemplated that the payment aspect of their contract would be performed at least in part in Kansas. Defendants do not dispute the fact that they sent the $2,000.00 initial purchase fee to PPI at its Overland Park office in Kansas. Accordingly, under *Continental American*, this is sufficient to establish personal jurisdiction over the defendants in Kansas.

---

[1] K.S.A. § 60-308(b)(5) is the subsection of the Kansas log-arm statute which provides for personal jurisdiction over a nonresident defendant as to any cause of action arising from a contract with a Kansas resident "to be performed in whole or in part by either party in this state."

[2] Because the court finds that personal jurisdiction is appropriate under K.S.A. § 60-308(b)(5), it declines to address the parties' arguments with respect to K.S.A. § 60-208(b)(1).

Moreover, the terms of the contract itself required PPI to search for potential businesses on behalf of defendants "within the greater Kansas City area." This further confirms that the parties intended some part of the contract, in addition to payment, to be performed in Kansas.

Because the court must resolve all factual disputes in favor of PPI at this procedural juncture, the court finds that the parties intended for the payment aspect and PPI's searching aspect of the contract to be performed at least in part in Kansas. Defendants reached out and created a continuing relationship with a citizen of Kansas. As such, they are subject to regulation in Kansas for the consequences of their activities in Kansas. Defendants purposefully directed their activities at Kansas by making payment on the contract and having PPI search for prospective businesses in Kansas; defendants thereby availed themselves of the privilege of conducting business in Kansas. By allegedly failing to pay PPI the final contract fee, defendants reasonably should have anticipated being haled into court here. Accordingly, PPI has made a prima facie showing that defendants have minimum contacts with the forum state of Kansas.

2.  Traditional Notions of Fair Play and Substantial Justice

In analyzing whether a court's exercise of personal jurisdiction offends traditional notions of fair play and substantial justice, the court determines whether its "exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case." *Pro Axess, Inc. v. Orlux Distrib'n, Inc.*, 428 F.3d 1270, 1279 (10th Cir. 2005) (quotation omitted); *accord Benton v. Cameco Corp.*, 375 F.3d 1070, 1078 (10th Cir. 2004), *cert. denied*, 544 U.S. 974 (2005). In undertaking this analysis, the

court considers: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Pro Axess*, 428 F.3d at 1279-80 (quotation omitted).

The minimum contacts and reasonableness inquiries are complementary such that they evoke a sliding scale: the weaker the showing of minimum contacts the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction and, vice versa, a borderline showing of minimum contacts may be fortified by an especially strong showing of reasonableness.  *Id.* at 1280; *Benton*, 375 F.3d at 1079.  Where a plaintiff has demonstrated that a defendant purposefully directed its activities at the forum state, the defendant "'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  *Pro Axess*, 428 F.3d at 1280 (quoting *Burger King*, 471 U.S. at 477).

Defendants argue that jurisdiction in Kansas is unreasonable because they do not have sufficient minimum contacts with Kansas.  However, as the court explained above, the defendants' actions are sufficient to establish the minimum contacts necessary to render personal jurisdiction in this court appropriate.  Accordingly, the defendants have presented no argument, affidavits, or other evidence from which the court can find that some other consideration would render jurisdiction over them unreasonable.  They have made no showing that litigating this lawsuit in Kansas would unduly burden them, particularly in light

of the fact that defendants are all residents of Iowa, which is relatively close to Kansas geographically. Furthermore, defendants have failed to show that Kansas does not have an interest in resolving this dispute or that litigating this lawsuit in Kansas would not further PPI's interest in receiving convenient and effective relief, would be contrary to the interstate judicial system's interest in obtaining the most efficient resolution of controversies, or would violate the shared interest of the several states in furthering fundamental social policies.

PPI has made a prima facie showing that defendants purposefully directed their activities at the forum state. Defendants have failed to persuade the court that the presence of other considerations would render jurisdiction unreasonable. Accordingly, since defendants have failed their burden of proof on this issue, the court finds that exercising jurisdiction over them does not violate traditional notions of fair play and substantial justice. Defendants' motion to dismiss for lack of personal jurisdiction is denied.

3.  Individual Defendants

Defendants make a superficial argument that this court cannot exercise personal jurisdiction over Mr. Ketcham, Mr. Langland, and Mr Kaldenberg because their personal contacts with the forum are insufficient. The cases that defendants rely upon in making this argument concern corporations and hold that a corporate officer's actions as an officer or employee of a corporation alone are insufficient to establish personal jurisdiction. *See e.g., Raytheon Aircraft Credit Corp. v. Pal Air Intern., Inc.*, 923 F. Supp. 1408, 1415 (D. Kan. 1996). However, the court concludes that *Raytheon* and the other cases cited by defendants are inapplicable here because, by defendants' own admission, the business operated by the

10

individuals, The Trium Group, "is not a *defacto* partnership and has never been an official or legal entity either by incorporation or proprietorship."[3]

To the extent defendants attempt to argue that personal jurisdiction over the individuals is inappropriate, the court disagrees. Throughout their briefs, plaintiff and defendants refer to the defendants collectively, implying that all defendants engaged in the negotiations and transactions with PPI. Furthermore, while it is unclear what type of business arrangement The Trium Group was, defendants repeatedly state that Mr. Ketcham acted as an agent for the Trium Group. Because the Trium Group is not a legal entity, the court concludes that Mr. Ketcham's actions on behalf of The Trium Group actually constituted actions as an agent for his business associates, Mr. Langland and Mr. Kaldenberg. Therefore, Mr. Langland and Mr. Kaldenberg are subject to personal jurisdiction based upon Mr. Ketcham's actions because "it is well established that a principal may be subject to the jurisdiction of the court because of the activities of its agent within the forum state." *Taylor v. Phelan*, 912 F.2d 429, 433 (10th Cir. 1990) (citations omitted). Although the record is not entirely clear, it implies that it was Mr. Ketcham who initially contacted PPI, sent e-mails to PPI, signed the contract, and sent the initial search fee of $2,000.00 to PPI in Kansas.[4]   As stated above, the court found these actions sufficient to establish personal jurisdiction;

---

[3]The court takes defendants at their word and declines to address whether The Trium Group is a joint venture or, as plaintiffs state, a "*defacto* Iowa partnership."

[4]To the extent these actions were not engaged in by Mr. Ketcham but by either Mr. Langland or Mr. Kaldenberg, personal jurisdiction over all individuals is still appropriate because the court concludes on this record that any action by an individual defendant was done on behalf of the other individual defendants.

accordingly, they are sufficient to establish personal jurisdiction over Mr. Ketcham's principals, Mr. Langland and Mr. Kaldenberg. *Taylor*, 912 F.2d at 433.

B.   *Venue*[5]

1.   Improper Venue

As an alternative to their motion to dismiss for lack of personal jurisdiction, defendants argue that venue is improper in this court. 28 U.S.C. § 1391(a) governs venue in this case. That section provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Defendants argue that venue is improper under § 1391(a)(2) because a substantial portion of the events occurred in Iowa, not Kansas. Specifically, defendants argue that venue is improper in Kansas because any face-to-face meetings between the parties occurred in

---

[5]Defendants state the agreement lacks provisions regarding choice of law, jurisdiction, and venue; they apparently argue this absence supports their contention that venue is inappropriate in Kansas. The court finds no basis for this argument.

12

Iowa. However, just because these events occurred in Iowa does not mean that a substantial portion of events did not occur in Kansas. This court has previously stated that "'[i]f the selected district's contacts are "substantial", it should make no difference that another's are more so, or the most so.'" *Rusty Eck Ford-Mercury*, 184 F. Supp. 2d at 1145 (quoting *Merchants Nat'l Bank v. Safrabank*, 776 F. Supp. 538, 541 (D. Kan. 1991)).

The defendants knew PPI was located in Kansas and directed payment of $2,000.00 to Kansas. *See id.* (finding a substantial portion of activities occurred in the District of Kansas when, among other things, defendants knew plaintiff was located in Kansas and directed payment to Kansas). Furthermore, the negotiation and execution of the contract took place in Kansas by way of the various phone calls, letters, and e-mails defendants directed into Kansas, and the alleged breach occurred when defendants sent a letter to PPI informing it they were unilaterally terminating the contract. *See Etienne v. Wolverine Tube, Inc.*, 12 F. Supp. 2d 1173, 1180-81. Accordingly, the court finds that although venue may have been proper in Iowa, it is equally proper in Kansas. *See id.*

2.      Transfer of Venue

The defendants alternatively move for transfer of venue to the Southern District of Iowa. Defendants rely on § 1391 in making this request, but motions to transfer are governed by 28 U.S.C. § 1404(a). That section provides as follows: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Section 1404(a) affords the district court broad discretion to adjudicate motions to

transfer based upon a case-by-case review of convenience and fairness. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Id*. at 1515. "'[U]nless the balance is strong in favor of the movant the plaintiff's choice of forum should rarely be disturbed.'" *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972)). The court must consider the following factors in determining whether to transfer a case:

> [T]he plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516.

The court concludes that defendants have failed to establish that the present forum is inconvenient; accordingly, transfer is not warranted here. Defendants argue that they will be burdened with the costs of litigating in a "distant" and inconvenient forum. Defendants

14

have not shown, however, that the inconvenience of a trial in Kansas outweighs the inconvenience plaintiff would face if the case were transferred to Iowa. Therefore, because a transfer would succeed only in shifting the inconvenience to PPI, the court will not disturb PPI's legitimate choice of forum, which is entitled to great weight. *See Etienne*, 12 F. Supp. 2d at 1181 (citing *Heating & Cooling Master Marketers Network, Inc. v. Contractor Success Group, Inc.*, 935 F. Supp. 1167, 1172 (D. Kan. 1996); *Pehr v. Sunbeam Plastics Corp.*, 874 F. Supp. 317, 321 (D. Kan. 1995)).

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' motion to dismiss for lack of personal jurisdiction or improper venue, or in the alternative, to transfer venue (Doc. # 6) is denied.

**IT IS SO ORDERED.**

Dated this 8th day of November, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge